IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

**October 28, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**FABIANO D.,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-77**      (Fam. Ct. Greenbrier Cnty. Case No. FC-13-2019-D-143)

**DYLAN Y.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Fabiano D.[1] ("Father") appeals the Family Court of Greenbrier County's January 31, 2024, final order that awarded Respondent Dylan Y. ("Mother") primary custody of the parties' seven-year-old child. Mother filed a response in support of the family court's order.[2] Father did not file a reply. The issues on appeal are whether the family court erroneously failed to apply the rebuttable presumption of equal 50-50 custodial allocation in its determination and whether it erroneously ignored the limiting factors set forth in West Virginia Code § 48-9-209 (2024).

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, the family court's decision is vacated, and this case is remanded for further proceedings consistent with this decision.

The parties never married and are the parents of one child, who was born in 2017 while the parties were living together in North Carolina. Shortly after the child's birth, the parties moved to Colorado. Around August 2018, Father relocated to Norfolk, Virginia, for

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Father is represented by Brandon L. Gray, Esq., and Matthew A. Bradford, Esq. Mother is represented by Emily S. Isaacs, Esq., and Leah M. Smith, Esq. The child's guardian ad litem, Amber Hinkle, Esq., did not participate in this appeal.

work, and in September 2018, Mother and child moved to Lewisburg, West Virginia, to be closer to Mother's family.

On July 18, 2019, Mother filed a Petition for Support and Allocation of Custodial Responsibility in the Family Court of Greenbrier County asking the court to adopt her proposed parenting plan and award her primary custody of the child. Mother alleged that Father failed to regularly exercise parenting time over the previous year and that Father used FaceTime communication with the child as an opportunity to degrade Mother. She proposed that Father's parenting time be supervised by her stepfather. At some point after the filing of this petition, the family court appointed a guardian ad litem ("GAL") for the child.

At the end of 2019, Father was exercising unsupervised parenting time with the child at his home in Virginia. The child returned home from the visit and indicated to Mother that Father had been touching him in a sexually inappropriate manner. In response, on January 2, 2020, Mother made a referral to West Virginia Child Protective Services ("CPS"), who conducted a brief investigation that failed to substantiate the allegations.

On February 5, 2020, Father filed an answer to Mother's Petition for Support and Allocation of Custodial Responsibility. In his answer, he denied the allegations of abuse and countered that Mother had a history of drug abuse, mental illness, and had withheld the child from him. Father requested primary custody of the child.

The GAL conducted an interview with Father on April 17, 2020. Father stated that he lived in Virginia, about four hours away from the child, but hoped to move closer. Shortly thereafter, Father moved to Kitty Hawk, North Carolina, which was approximately seven hours away from where the child resided in West Virginia. On July 1, 2020, the GAL recommended increasing Father's parenting time but further recommended that such visitation occur in West Virginia. Over the next several months, those visits occurred at a hotel Father booked in the Lewisburg area.

In early July of 2021, Mother was contacted by the Dare County, North Carolina Department of Social Services ("DSS") informing her that an anonymous report had been made to them and they requested a forensic interview of the child. That interview also disclosed additional inappropriate touching of the child by Father. After consulting with the GAL, Mother's counsel filed a Motion for Ex Parte Order for Temporary Custody on July 13, 2021. Following a comprehensive investigation and examination of the forensic interview DVD, the GAL issued a report on September 30, 2021. The report indicated that while the child's allegations were significant, some of them were fantastical and unrealistic.

Due to the CPS and DSS investigations, the family court made a written referral to the circuit court based upon its reasonable suspicion that the child had been abused or

neglected. *See* W. Va. R. Prac. & Proc. For Fam. Ct. 48. Thereafter, on October 14, 2022, the case was removed to the Circuit Court of Greenbrier County. The case was dismissed by the circuit court on March 20, 2023, based upon its finding that there was not clear and convincing evidence of sexual contact between Father and child. As a result of the dismissal, jurisdiction was returned to the family court.

On August 9, 2023, the family court entered a temporary parenting order. This temporary order adopted the GAL's recommendation and allocated parenting time as follows: Beginning in August, Father would exercise parenting time with the child every second and third weekend in West Virginia from 12:00 p.m. to 4:00 p.m. on Saturday and Sunday, but these visits would not be overnight. Beginning in October, visitation would be overnight in West Virginia from 12:00 p.m. Saturday to 4:00 p.m. Sunday. Any party who did not have parenting time with the child was allowed telephone contact with the child every night between 7:00 p.m. and 8:00 p.m.

The GAL sent a final recommendation letter to the family court on January 17, 2024. The GAL recommended the current visitation remain in effect for the rest of the school year. The GAL recommended that the parties alternate spring and Thanksgiving breaks each year, and split Christmas break. Regarding summer visitation, the GAL recommended that the parties alternate custody during the summer weeks—Mother having the child for two consecutive weeks in a row and Father having one week—and when school resumed, that Father should have one extended weekend with the child in North Carolina and two other weekends in West Virginia each month.

At the final hearing on January 25, 2024, Father contended that Mother had failed to rebut the presumption of 50-50 custody and asserted his entitlement to primary custody because of the CPS referrals he deemed to be fraudulent. Father's counsel proffered the following argument for the assertion that the referrals were fraudulent:

> [M]y client had asked for primary custody due to the unsubstantiated referrals that were made by [M]other. . . And, of course, under the code[,] that would be grounds for a change in custody. . . He still is requesting primary [custody] as a result of those fraudulent reports of child sex abuse that were never substantiated.

The GAL, however, opined that West Virginia Code § 48-9-102a applies only to initial cases that are filed after the effective date of the statute, thus the presumption of 50-50 custody did not apply. The GAL expressed the view that even if the 50-50 presumption were applicable, the child's best interests should take precedence, and considering the significant distance between the parties and the fact that Mother had traditionally been the primary caregiver for the child, a 50-50 custody arrangement would not serve the child's best interests.

3

The family court issued its final order on January 31, 2024. Acknowledging the recommendations provided by the GAL, the court endorsed the GAL's recommendations, deeming them to serve the child's best interest. Considering the geographical distance between the parties as a significant factor, the court's order opted for a parenting plan mirroring the one described in detail in the GAL's letter. It is from this order that Father now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Father argues that the family court erroneously failed to apply West Virginia Code § 48-9-102a (2022) and failed to analyze the factors presented in West Virginia Code § 48-9-209 when determining custodial allocation. We agree.

This Court has previously stated that,

> West Virginia Code § 48-9-603(a) (2022) controls the effectiveness of the 50-50 presumption in this matter, providing that "[the presumption] shall become applicable upon the effective date of [the] amendment." Accordingly, any best interest analysis conducted after June 10, 2022, the effective date of West Virginia Code § 48-9-102a, is required to consider the 50-50 presumption. As to the burden of proof, the presumption points toward equal parenting time; therefore, *any* party seeking to deviate from a 50-50 allocation must overcome the presumption.

*Jesse C. v. Veronica C.*, No. 23-ICA-169, 2024 WL 1590468, at *3 (W. Va. Ct. App. Feb. 8, 2024) (memorandum decision). Thus, the family court was required to consider equal 50-50 custody in its determination.

West Virginia Code § 48-9-102a provides that it is rebuttably presumed "that equal (50-50) custodial allocation is in the best interest of the child." Additionally, it is essential that family courts adhere to West Virginia Code § 48-9-206(a) (2022) when hearing custody matters. Regarding the statute, this Court has previously held:

4

This statute presumes equal (50-50) parenting time for both parents unless the parties agree otherwise. This presumption may be rebutted if the family court finds by a preponderance of the evidence that the arrangement would be harmful to the child, or a provision of West Virginia Code § 48-9-209(f) (2022) requires a different custodial allocation. West Virginia Code § 48-9-206(d) requires that a determination of custodial allocation in a final permanent parenting plan order be based on the presentation of evidence and include specific findings of fact and conclusions of law supporting the determination.

*Jonathon F. v. Rebekah L.*, 247 W. Va. 562, 563, 883 S.E.2d 290, 291 (Ct. App. 2023).

Here, the family court's order failed to properly apply the law governing the allocation of custodial responsibility. Specifically, the court failed to explain how Mother rebutted the presumption of equal 50-50 custody by a preponderance of the evidence and failed to provide sufficient findings of fact and conclusions of law to support its deviation from the presumption when it awarded her primary custody of the child. As we have previously held, it is essential for family courts to articulate their findings and to explain their reasoning for making such findings. *See Dusti A. v. Jonathan A.*, No. 23-ICA-125, 2024 WL 794624, at *5 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision).

Here, the family court failed to analyze whether Mother rebutted the presumption of equal 50-50 custody as required by law and, thus, the family court's order must be vacated with the matter remanded to the family court for a proper legal analysis. Upon remand, the family court may reach the same conclusion.[3] However, any party seeking more than 50-50 custodial allocation has the burden of rebutting the presumption and a proper analysis must be performed by the court which is set forth through sufficient findings of facts and conclusions of law in a corresponding written order.

For the foregoing reasons, we vacate the family court's January 31, 2024, final order and remand this case to the family court with directions to issue an order with specific findings of fact and conclusions of law in accordance with West Virginia Code §§ 48-9-206 and 48-9-209 by adhering to West Virginia Code § 48-9-102a. The final order is hereby converted to a temporary custodial allocation order until the entry of a new final order consistent with this decision is issued by the family court.

Vacated and Remanded.

---

[3] On remand, child support should be modified if the family court reaches a different conclusion regarding custodial allocation after performing the required analysis.

**ISSUED:**  October 28, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear